IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Karl David Krester, Jr., )<br>    Petitioner, )<br>)<br>v. )<br>)<br>J. Andrews, )<br>    Respondent. ) | 1:20cv100 (LO/JFA) |

MEMORANDUM OPINION

Federal inmate Karl David Krester, Jr. ("Krester" or "petitioner") filed a 28 U.S.C. § 2241 petition for a writ of habeas corpus alleging that the Bureau of Prisons ("BOP") violated his due process rights by failing to provide him with a copy of a Discipline Hearing Officer's ("DHO") report in a timely fashion following a hearing, which prevented him from filing an administrative appeal[1] with the BOP.[2] Respondent filed a motion to dismiss [Dkt. No. 10], with a brief in support and exhibits, and provided petitioner with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 10-1]. Petitioner has filed a response and the matter is now ripe for adjudication. For the reasons stated below, respondent's motion to dismiss must be granted, and the underlying petition must be dismissed.

I. Background

Krester is presently detained at FCI-Petersburg and has a release date of July 24, 2032. Dkt. No. 11 at 2. On August 29, 2019, petitioner was charged with a violation of BOP

---

[1] Krester intended to raise four issues in an administrative appeal: 1) his loss of good time credits and telephone privileges; 2) that he was denied evidence during his hearing; 3) that he received an "illegal sentence;" and 4) that he was denied a staff representative. See Dkt. Nos. 1 at 6; 1-1 at 2; 1-2 at 3.

[2] In his petition, petitioner spells his last name "Kretser." The BOP website does not list an inmate with the last name of "Kretser" but does list "Karl David Krester" with the same prisoner number listed in the present petition. Respondent and all of the BOP documents also spell petitioner's last name "Krester." Accordingly, "Krester" is used in this opinion.

Disciplinary Code 297, phone abuse, a three-way telephone call. Dkt. 11-1 at 12. Section 11 of the Incident Report stated that Krester had called his daughter and that

> [a]t approximately two minutes into the six-minute call, his daughter asks him to hold on, and answers a call from an outside party while inmate Krester is on the line. His daughter proceeds to relay information to the outside party, while inmate Krester is able to hear. His daughter then asks him questions relating to the date the legal work was sent in, then his daughter proceeds to relay information between him and the 3rd party. The 3rd party then places his daughter on hold, and inmate Krester advises his daughter to email him later because he needs to know if they got the legal document. Third party phone calls pose a detriment to institutional security, and are not authorized.

Id. The third party was apparently someone at The United States Supreme Court in which Krester had pending litigation. In response to the charge, Krester stated he "did not make a 3-way call, she was already on the phone with the Supreme Court when she answered [his] call" but he may have "asked her to make sure she asked them a few certain things." Id. at 14. The charge was reviewed and served on Krester on August 29, 2019, and then referred to the Unit Discipline Committee ("UDC") for a hearing on September 3, 2019.

On September 3, 2019, Krester appeared before the UDC to answer the charges. During the UDC hearing, he stated "I called first then my daughter did place me on hold. She never told me she was speaking to someone else about my questions. I did not know what she was doing." Due to the severity of the incident, the UDC referred the matter to the DHO for further hearing. Id. at 3-4. On September 3, 2019, Krester was advised his charge was being so referred. At the end of the UDC hearing, Krester was served with a Notice of Discipline Hearing Form which he signed. The form indicated he had requested a staff representative at the DHO hearing but that he did not wish to have any witnesses. Id. at 16. On October 31, 2019, Krester noted on the same form, next to where he had indicated he wanted a staff representative, that he was now waiving his right to have a staff member present at the hearing. On the form, written by hand is "Inmate waived staff rep on 10-31-19") and Krester's signature appears on the form next to the

waiver, directly below the date. Id. The waiver was noted in the DHO report of the hearing. Id. at 20.

At the hearing on November 1, 2019, Krester indicated that he had received a copy of the relevant incident report, that he understood his rights, and denied the charge. Id. at 20. The DHO's report ("Report") summarized the initial portion of the hearing as follows:

> Inmate Krester acknowledged receipt of a copy of the report and understanding his rights before the DHO. Inmate Krester did not request video to be reviewed. He did not raise any issues or concerns with the discipline process to this point. The DHO then read aloud Section 11 of the Incident Report and asked inmate Krester if it were true.
>
> Inmate Krester made this initial statement: "I did not know what was going on. The courts called her work phone and I was talking to her. She only asked me one question. My daughter did not know what she was doing was wrong. It did not happen like that."

The Report indicates the DHO reviewed a text print out of the telephone call. Dkt. No. 11-1 at 21.

The DHO found Krester had committed phone abuse on August 29, 2019 in violation of Code 297 based upon the incident report, Krester's statements, and her review of the telephone call. The DHO did not find Krester's testimony credible. After reviewing the call at Krester's request, the DHO found that Krester had been "aware that [his] daughter was trying to call the courts previously and that she had been expecting a call regarding a legal situation for [Krester]" and that "[w]hen she received the call, [Krester] told [his] daughter what to say on the call and what questions to ask, before she asked [Krester] to hold on and before she was placed on hold." Id. at 22. Based upon the credible evidence presented, the DHO found that Krester "participated in a third-party call," which violated Code 297. Id. At the conclusion of the hearing, the DHO imposed the following administrative sanctions: (1) disallowance of twenty-seven days of good conduct time ("GCT"), and (2) six months loss of telephone privileges. Id.

Krester attempted to appeal the DHO's decision, but his appeals were rejected because Krester did not have a copy of the DHO's report to file alongside the appeal. Dkt. Nos. 1-2 at

3

10-11; 11-1 at 9-10. Krester filed the instant petition on January 16, 2020. Dkt. No. 1 at 9. The DHO report, dated May 20, 2020, was delivered to Krester approximately four months later, on May 24, 2020. Dkt. 11-1 at 23. The delay in completing the DHO report was due to personnel shortages, which resulted in a backlog of cases. Id. at 6. Krester was notified by the BOP that he could appeal the DHO's findings through the BOP's Administrative Remedy Procedures within twenty calendar days of receiving the DHO report. Krester did not pursue an appeal, id. at 10, which Krester admits in his response to the motion to dismiss. Dkt. No. 13 at 1.

## II. Standard of Review

A district judge may properly treat a motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 12, if "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Because respondent attached several documents to his motion, including a signed declaration and portions of the disciplinary hearing record, his motion will be construed as one for summary judgment.[3]

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To do so, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it

---

[3] In support of his Motion for Summary Judgment, Respondent submits: (1) the Declaration of Jillian Anspach, DHO Secretary at FCC-Petersburg, (Dkt. No. 11-1); (2) an Incident Report (id. at 12); (3) a Notice of Discipline Hearing Before the DHO form (id. at 16); (4) an Inmate Rights at Discipline Hearing form (id. at 18); (5) a DHO Report (id. at 20); and (6) records of Krester's administrative remedy requests (id. at 25).

4

is entitled to judgment as a matter of law, the burden shifts to the non-moving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In his response to respondent's motion, Krester does not contest the facts in the administrative record attached to the supporting brief. Instead, Krester attempts to explain why he did not appeal the DHO's decision after he was given a copy of the DHO's report on May 24, 2020, stating he only had one copy of the report, no access to a copy machine, and he "thought" that because this matter was pending he had to send it here. Dkt. No. 13 at 2. Krester then emphasizes that the delay in receipt of the report (over seven months) deprived him of the opportunity to have his telephone privileges restored. Id. at 1-2.

### III. Analysis

To obtain habeas relief under § 2241, a petitioner must demonstrate that he is being detained in federal custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, petitioner alleges the DHO violated his due process

5

rights by failing to provide him with a copy of the DHO report in a timely fashion following the hearing; he was denied evidence during his hearing; that he received an "illegal sentence," and that he was denied a staff representative. See Dkt. Nos. 1 at 6; 1-1 at 2; 1-2 at 3. Krester focuses his arguments on the BOP's failure to provide him the DHO report within the timeline articulated by the agency's rules and regulations, and the loss of his opportunity to challenge his loss of telephone privileges. See Dkt. No. 13 at 1.

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a due process claim is to identify whether the alleged conduct affects a protected interest. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself or from state or federal laws and policies. See Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005).

### A. *BOP's Failure to Abide by its Regulations and Program Statements*

Citing to BOP Program Statement 5270.09, petitioner argues that his due process rights were violated because the DHO's failure to provide him with the report prohibited him from being able to appeal the DHO's decision.[4] See Dkt. Nos. 1-1 at 1; 1-2 at 5. Petitioner's issue with BOP's failure to abide by its own internal rules, however, does not give rise to a legitimate claim for habeas relief. See Mendoza v. Tamez, 451 F. Appx 715, 717-18 (4th Cir. 2011) ("Prison regulations ... create liberty interests only when they protect inmates from atypical or significant hardship ... in relation to the ordinary incidents of prison life. Late notice of a disciplinary charge does not represent such a hardship.") (internal citation and quotations omitted); see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("A habeas claim cannot

---

[4] In pertinent part, Program Statement 5270.09 § 541.8(h) reads, "The DHO prepares a record of the proceedings. The evidence, decision, and reasons for actions taken must be specific, unless this would jeopardize security. The DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision."

6

be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law."). Although it is undisputed that Krester did not receive the DHO report within the timeline articulated by BOP policies, this noncompliance, standing alone, does not constitute a violation of due process.

Moreover, the BOP delivered a copy of the DHO's report to petitioner on May 24, 2020 and informed Krester he had twenty days to file his administrative appeal. Petitioner, therefore, received the relief that he was entitled — a copy of the DHO report and the ability to appeal the DHO's decision. Indeed, he conceded as much in his recent filing with the Court. Dkt. 8 at 1 ("Today being May 24, 2020, I finally received my DHO Report."). As courts have recognized, with respect to a claim that an inmate did not receive the DHO Report, such a claim is rendered moot if the inmate receives the report "after filing" an action. Shahan v. Ormond, No. 3:18CV200, 2018 U.S. Dist. LEXIS 214149, at *14-15 (E.D. Va. Dec. 19, 2018) (E.D. Va. Dec. 19, 2018), aff'd 778 F. Appx 217 (4th Cir. 2019); see also Patterson v. Bolster, No. 3:18CV854, 2020 U.S. Dist. LEXIS 19857, *14 (E.D. Va. Jan. 31, 2020); Ogburn v. Bolster, No. 2:18cv691, 2019 U.S. Dist. LEXIS 161096, *28 (E.D. Va. Aug. 12, 2019), report and recommendation adopted 2019 U.S. Dist. LEXIS 161042 (E.D. Va. Sept. 18, 2019).

*B. Due Process*

It is unclear whether Krester intended to pursue a claim based on his alleged inability to appeal the findings of and sanctions imposed by the DHO without a physical copy of the Report.[5] To the extent petitioner intended to do so, however, his claim is without merit.

---

[5] Petitioner does not list his inability to appeal the DHO decision as a "ground" in his § 2241 petition, but petitioner stated that the BOP refused his appeals because he did not have a copy of the DHO's report and he was unable to challenge the sanctions (loss of GTC and telephone privileges) because he did not have a copy of the report. Dkt. No. 1-1 at 1. In any event, in deference to petitioner's pro se status, the Court shall construe petitioner's filing to include this as a stated ground for relief.

7

Krester has a protected liberty interest in vested GCT, see, e.g., Sciolino v. City of Newport News, Va., 480 F.3d 642, 653 n.9 (4th Cir. 2007), and is guaranteed the following amount of process when revocation of that GCT occurs:

> (1) written notice of the disciplinary charges at least twenty-four hours in advance of the disciplinary hearing; (2) a neutral and detached hearing body; (3) the opportunity to call witnesses and present documentary evidence; (4) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex; and (5) a written statement provided by the fact finder(s) outlining the evidence relied upon and the reasons for the chosen course of disciplinary action.

Russell v. Wilson, No. 2:15cv51, 2015 U.S. Dist. LEXIS 95063, *13-14 (E.D. Va. June 17, 2015) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)), adopted by, No. 2:15cv51, 2015 U.S. Dist. LEXIS 94751, *1 (E.D. Va. July 20, 2015). The record demonstrates that petitioner received notice of the DHO hearing on September 3, 2019, over a month before his hearing took place.

Krester makes a number of allegations against the DHO in his petition. Specifically, that she refused to let him listen to the call and denied him a staff representative. Krester also insinuates during his various arguments on other matters that the DHO was unprofessional during the hearing, had not reviewed the telephone call, and called him "a liar" Dkt. 1-2 at 3; and that the DHO told him before the hearing on October 31, 2019 that she was going to impose only four months of loss of telephone privileges but would listen to the actual call first. Krester also alleges that the DHO listened to a telephone call he made to his daughter on October 31, 2019 and using an aggressive tone told him he was a "horrible dad" and increased his loss of telephone privileges from four to six months "based upon a call that was not connected to the alleged wrong doing." Id. While Krester does not allege she was not impartial or biased, to the extent his various complaints could be construed as a claim of bias, it has no merit.

The record shows, contrary to Krester's allegation, that the DHO reviewed the call at issue in response to his request. Dkt. No. 11-4 at 21. After reviewing the transcript, the DHO

concluded that the investigating officer's version of the telephone call was correct. By acceding to Krester's request to review the call, the record shows the DHO was fair and impartial. Regarding the alleged matters on October 31, 2019, even if the DHO did listen to the October 31, 2019 call, there is no evidence that the DHO considered the October 31, 2019 call in reaching her decision in Krester's case, or that the call was prejudicial to Krester's case. The record again states that the DHO relied on the transcript of the August 29, 2019 call and does not mention listening to an October 31, 2019 telephone call.

Moreover, government officials, including prison hearing officers, are "presumed to act in good faith." Worrell v. Deboo, No. 5:07CV90, 2009 U.S. Dist. LEXIS 42825, at *8 (N.D. W. Va. May 20, 2009) (quoting Bridge v. United States Parole Comm'n, 981 F.2d 97, 106 (3d Cir. 1992)). Disciplinary hearing officers are "entitled to a presumption of honesty and integrity," and "the constitutional standard for impermissible bias is high." Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003). Accordingly, "prisoners' claims of bias and retaliation are to be viewed with skepticism." Wheeler v. Perdue, No. 1:14cv36, 2014 U.S. Dist. LEXIS 181157, *17 (N.D. W. Va. Jan. 27, 2015) (citing Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996)), adopted by, 2015 U.S. Dist. LEXIS 8992 (N.D. W. Va. Jan. 27, 2015). Krester's allegations do not overcome the presumption that DHO only acted on the information set forth in the DHO Report and seem to be an outgrowth of sorts from his angst that his assertion that he could not have violated Code 297 because he did not know his daughter "was speaking with someone else about his questions" was not accepted by the UDC or DHO. Dkt. No. 11-4 at 13-14.

Krester's focus on who initiated the call, however, is irrelevant. Code 297 does not prohibit an inmate from initiating a three-way call. Instead, Code 297 prohibits use of a telephone in a manner that "circumvent[s] the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act." BOP Inmate Discipline Program, High Severity Level Prohibited Acts at 49 (hereinafter

"BOP Inmate Discipline Program").[6] The evidence reflected in the DHO's report, which Krester does not dispute as to any relevant matter, provides a substantial basis to infer that Krester knew his daughter was expecting a call and that Krester participated in that call. Krester himself initially admitted that he may have "asked [his daughter] to make sure she asked them a few certain things" id. at 14, which is, in essence, an admission that he participated in a three-way call. In short, Krester participated in a three-party conversation (*i.e.* used the telephone) regardless of whether he initiated the call or not. The DHO's report is supported by evidence, and therefore satisfies due process. See Hill, 472 U.S. at 455-56.[7]

Indeed, Krester has never challenged the Incident Report's charge that he and his daughter were on the phone conversing when a third party called and that his daughter then began to act as an intermediary relaying questions and information to and from Krester to the court. Dkt. No. 11-1 at 21. The only reasonable inference from the record is that Krester participated in a three-way telephone call, and who initiated the call is irrelevant. Further, without a demonstration of prejudice, any error is harmless. See Jones v. Cross, 637 F.3d 841, 846 (7th Cir. 2011) (where inmate suffered no prejudice, "any conceivable due process violation was harmless.") (citing Piggie, 344 F.3d at 678).

As to the third and fourth requirements in Wolff, it is undisputed that petitioner received the opportunity to call witnesses and be represented by a staff representative, which although he

---

[6] See https://www.bop.gov/policy/progstat/5270_009.pdf (last viewed July 27, 2020).

[7] Due process requires that some evidence must support "the decision by the prison disciplinary board to revoke" GCT. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985) (emphasis supplied). Hill emphasized that "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56 (citations omitted). Furthermore, federal courts will not review the accuracy of a disciplinary committee's finding of fact. Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Those findings will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious. Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981).

initially requested he later waived his right to have a staff member present on October 31, 2019. Krester waived the right to call any witnesses on September 3, 2019 at the UDC and reaffirmed that at the hearing on November 1, 2019. Dkt. No. 11-1 at 14, 16, 21. Finally, although it is true that petitioner did not receive the DHO report until after he filed the petition at issue, he ultimately did receive the written statement on May 24, 2020.

*C. Prejudice*

In the context of an inmate's delayed receipt of a DHO's report, courts have held that inmates do not suffer any prejudice when they receive the report months after the hearing and that such a multi-month delay does not in and of itself constitute a due process violation. See, e.g., Griffin v. Ebbert, 640 F. Appx 181, 184 (3d Cir. 2016) (concluding that there was no due process violation when an inmate received the DHO's report eighteen months after his hearing "because [the inmate] had not demonstrated that he suffered any prejudice as a result of the eighteen-month delay, [and] he had received the process he was due under Wolff"). Indeed, "[i]t is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." Consolidation Coal Co. v. Borda, 171 F.3d 175, 183 (4th Cir. 1999) (citation omitted). To be sure, Krester was not denied a right to appeal because once he received the DHO report, his window to appeal the DHO's findings opened.

Krester claims of prejudice also do not take into consideration the fact that "he loses a significant interest in his liberty for the period of his sentence ... that the liberty interest of a convicted defendant is substantially restricted, and his confinement is properly subject to the management of prison officials." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. In Sandin v. Conner, 515 U.S. 472 (1995) the Court held that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must

show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., at 484. The denial of privileges is a matter clearly contemplated by Krester's original sentence. See Gaston, 946 F.2d at 343 (prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"). It is well established that inmates do not have absolute right to telephone use. See Freitas v. Ault, 109 F.3d 1335, 1337-38 (8th Cir. 1997) (finding that an involuntary transfer to a higher-security facility and loss of work and phone privileges did not constitute atypical and significant hardship); United States v. Alkire, 82 F.3d 411 (4th Cir. 1996) (table case) ("Alkire's complaint that the portion of the sentence restricting his use of a telephone while in prison is without merit; there is no constitutional or federal statutory right to use of a telephone while in prison."); Smith v. Roper, 12 F. Appx. 393, 396 (7th Cir. 2001), cert. denied, 534 U.S. 1093 (2002) ("In light of Sandin, the deprivations that Smith suffered as a result of the disciplinary proceedings – namely, 22 days in segregation, a six-month loss of privileges associated with his demotion to C class, and six days without phone privileges – do not implicate a liberty interest."); see also Wright v. Shartle, 699 F. Appx 733, 733 (9th Cir. 2017) (citation omitted) (explaining that claims regarding the loss of phone privileges are "not cognizable under section 2241 because they do not concern the manner, location, or conditions of [an inmate's] sentence's execution"). Consequently, the inability to challenge the loss of telephone privileges is not a loss that would support a due process violation claim.

To the extent Krester may argue that he was prejudiced by not having his issues heard on appeal, it was Krester himself who chose not to appeal the DHO's decision. To prove a due process violation, Krester "must prove both but-for causation and proximate causation – in other words, that the alleged wrongful act(s) caused [his] loss of liberty and the loss of liberty was a

reasonably foreseeable result of the act." See Gilliam v. Sealey, 932 F.3d 216, 238 (4tht Cir. 2019) (citations omitted). Krester's own actions negated the appeal to the BOP and therefore he cannot prove the BOP caused him a loss. Further, as "unfair" as it may seem to Krester that a delay in being able to pursue an appeal negated his chance to reinstate his telephone privileges, that was never a loss of constitutional magnitude. See, supra at 11-12. In short, he suffered no prejudice from the actions of the DHO's failure to provide the DHO report in a timelier manner. Krester therefore waived the right to challenge the sanctions imposed, the alleged denial of evidence during his hearing, and that he was denied a staff representative. Moreover, in any event, the issues he sought to appeal had no merit.

Krester's assertion that the punishment imposed was not in accordance with BOP policy is incorrect. Code 297 is listed under the title "High Severity Level Prohibited Offense Acts" and the allowable sanctions for such offenses include disallowance of "between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended)," and "Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation)." BOP Inmate Discipline Program at 46, 49. The DHO may also "impose one or more of" the available sanctions. Id. at 9. The sanctions were within the range provided and were not "illegal."

The last issue Kester lists in his petition that he sought to appeal was an alleged denial of evidence. Specifically, that he was denied the right to listen to the telephone call to prepare his defense. Dkt. No. 1-1 at (citing 28 C.F.R. § 541.8). Section 541.8, upon which Krester relies, does not provide the right to listen to the call as he asserts. The Incident Report provided a summary of the call, which Krester has not disputed, and that was part of his right to notice. Further, the record of the DHO proceedings and hearing do not indicate that Krester ever asked to listen to the call, only that he asked the DHO to review the call and that she complied with his request. The two summaries of the call in the record, the Incident Report and the DHO's Report,

are consistent with one another on the relevant points. Krester was on the call with his daughter when she received a call from the court, Krester was aware of and listening to the conversations between his daughter and the court, and Krester's daughter acted as an intermediary between Krester and the court. Krester was denied nothing to which he was entitled.

Krester's also appears to dispute the DHO record at times, with regard to whether he was denied evidence and the assistance of a staff member in the documents supporting his petition, but he has not contested the DHO record submitted by respondent and his response to the motion for summary judgment does not address either the alleged denial of evidence or assistance of the staff member. Consequently, he has not overcome the presumption of regularity as it relates to official acts and records. See Coreas v. Holder, 526 F. Appx 322, 326 (4th Cir. 2013) (citing Almy v. Sebelius, 679 F.3d 297, 309 (4th Cir. 2012) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.")). When the issue in question is officials' adherence to their own agency procedures, "[t]he presumption is 'sufficient to sustain the inference' that the agency did 'whatever was appropriate' to effectuate the procedure." Petrelle v. Weirton Steel Corp., 953 F.2d 148, 153-54 (4th Cir. 1991) (citation omitted). "Accordingly, federal courts have generally been unwilling to credit a prisoner's assertion that the records produced in the course of prison disciplinary proceedings are falsified or incorrect absent convincing evidence." Allen v. Young, No. 5:18-cv-01463, 2020 U.S. Dist. LEXIS 86219, *37-38 (S.D. W. Va. March 2, 2020) (collecting cases), adopted by 2020 U.S. Dist. LEXIS 85286 (S.D. W. Va. May 13, 2020).

## IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 10] is granted, and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.

Entered this 4th day of August 2020.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge